Fuchsberg, J.
Defendant was convicted, after a jury trial, of the crimes of possession of a weapon as a felony (Penal Law, § 265.05, subd 3, renumbered by L 1974, ch 1041 as § 265.01, subd [1] and §265.02, subd [1]) and criminal possession of a dangerous drug in the sixth degree (former Penal Law, § 220.05). The Appellate Division unanimously affirmed. Defendant, on this appeal to us, argues that the Trial Judge committed reversible errors, both by instructing the jury that it could consider defendant’s failure to call his wife, an eyewitness to the events at issue, as a witness and in earlier highlighting comments on that fact.
We conclude that there was no error.
A summary of the evidence is helpful to an understanding of the issue. On August 27, 1971, three narcotics officers of the New York City Police Department, preparatory to the execution of a warrant authorizing them to conduct a search of defendant’s apartment, were waiting in front of the house in which it was located, when they saw defendant’s car pull up to the curb. The officers spoke to the driver, who was not the defendant, and two of the officers accompanied him to the apartment, while the third one, Officer McManus, stationed himself in the rear yard, from which he could observe the windows of the apartment. Within minutes, McManus saw one of the windows open and a paper bag thrown out. He found it contained drugs and a .38 calibre revolver. He quickly ran into the building, where he found his fellow officers still in the hallway outside the apartment door. As McManus arrived, the defendant opened the door and was placed under arrest. His wife and a family friend, Onida Orengo were in the apartment at the time.
At the trial, Rodriguez’ defense was built around the claim that he was the victim of a “frame-up” and that the officers had stolen $800 from him after entering the apartment on the pretext that they were investigating a hit-and-run accident. He testified that the contraband McManus had retrieved was not his and denied throwing it out the window.
As defendant was about to leave the stand following the completion of his cross-examination, the Trial Judge, in the presence of the jury, asked him whether his wife was present *98 at the time of the incident and whether she was going to testify. He replied that she was present but would not be called as a witness. The next morning, out of the presence of the jury, defense counsel took exception to the Judge’s remarks, advising the court that the defendant did not want his wife to testify because she was nervous, having been recently arrested, and would make a poor witness.
Subsequently, upon completion of the main charge, defense counsel, in the presence of the jury, requested a supplemental charge that "the defendant [need] not take the stand, nor need he bring witnesses in his behalf.” The court replied: "The absence of a witness-you want to take exception to what I say, you may. The jury may consider the absence of any witness if the witness did have evidence that may have shed light upon material aspects of this case and provided that that witness was in control of the litigant failing to call that witness.”
Ordinarily, a court may not comment upon a defendant’s failure to testify or otherwise to come forward with evidence, but, once a defendant does so, his failure to call an available witness who is under defendant’s control and has information material to the case may be brought to the jurors’ attention for their consideration (People v Leonardo, 199 NY 432, 436; People v Hovey, 92 NY 554, 559; 2 Wigmore, Evidence [3d ed], §§ 285-291; 1 Wharton’s, Criminal Evidence [13th ed, 1972], §§ 148-149, pp 249-254; 4 Bender’s NY Evidence, § 245.03, subd [8]; McCormick, Evidence [2d ed, 1972], § 272, p 656 et seq.; but see People v Conklin, 39 AD2d 160, 162.)[1]
Though the rule ordinarily does not apply when a witness is equally accessible to both parties (Richardson, Evidence [10th ed], § 92), it may come into play even then if it appears that such a witness is favorable to one party and hostile to the other. (See discussion in McCormick, Evidence [2d ed, 1972], § 272, pp 657-658; 2 Wigmore, Evidence [3d ed], § 288.)
In both instances, respected authorities make clear that, so long as comment or instruction on the absence of the witness *99 is unaccompanied by one on the accused’s personal failure to testify, no constitutional right is infringed (Graves v United States, 150 US 118, 121 [semble]; United States v Fox, 97 F2d 913, 915 [L. Hand, J.]; 8 Wigmore, Evidence [McNaughton rev, 1961], § 2273; see, also, discussion in 4 Bender’s, NY Evidence, §242.14, subd [1], par [c]; Cook, Constitutional Rights of the Accused—Trial Rights, § 62, pp 240-242, and cases cited therein).
The mere fact that an uncalled witness is the spouse of the accused does not alter the situation. For it has been held, in criminal cases (People v Hovey, 92 NY 554, supra, cited with approval in Graves v United States, 150 US 118, 121, supra; People v O’Dell, 36 AD2d 774; People v Bolster, 24 AD2d 774) as in civil cases (see Deutschmann v Third Ave. R. R. Co., 87 App Div 503, 515), that, absent a privileged communication, a jury may consider the failure of a defendant to call his spouse. The presence of a third party, Ms. Orengo, at the events to which the wife here was in a position to testify, rendered the privilege inapplicable here (People v Ressler, 17 NY2d 174; People v Melski, 10 NY2d 78; see, also, cases collected in Presumption—Failure to Call Witness, Ann., 5 ALR2d 893, 930; 1 Wharton’s Criminal Evidence [13th ed], op. cit, § 149, p 253).
The marital privilege historically has developed from the common-law rule which completely disqualified a wife from testifying for or against her husband. She was held to be incompetent to do so for two reasons: first, spouses were considered as an entity and, therefore, deemed to be interested in the outcome of the litigation in which the other spouse was a direct party; second, it was considered necessary to avoid subjecting domestic tranquility to the disturbance which was thought to flow from the giving of testimony by one spouse against the other. (1 Coke, Commentary upon Littleton [19th ed, 1832], § 6b; 2 Kent’s Commentaries 179; see Bentley v Cooke, 3 Doug [K B Reports] 422.)
The first universal exception to that rule was the application of the doctrine of "necessity”, permitting a spouse to testify where a crime was committed by one spouse against the other. (8 Wigmore, Evidence [McNaughton rev, 1961], op. cit., § 2239.) From this point on, the majority of jurisdictions (Hutchins & Slesinger, Some Observations on the Law of Evidence: Family Relations, 13 Minn L Rev 675; see statutes collected in Note, 38 Va L Rev 359), including New York *100 (CPLR 4512; former Penal Law, § 2445; People v Ressler, 17 NY2d 174, supra; People v Melski, 10 NY2d 78; supra), went on to abolish the common-law disqualification and substitute a privilege varying in application in differing jurisdictions (Ladd, Privileges, 1969 Law and Social Order 555, 558-559; Note, 56 Nw U L Rev 208; Note, 34 U Chi L Rev 196).[2] In New York that privilege is triggered where the testimony concerns a "confidential communication” "which would not have been made but for the absolute confidence in, and induced by, the marital relationship.” (People v Melski, supra, p 80; see, also, People v Dudley, 24 NY2d 410, 413-414; CPLR 4502, subd [b]; cf. People v Scull, 37 NY2d 833.) However, as indicated above, the presence of a third party negates intent to make such a "confidential communication” in the present case. For that reason it is also unnecessary for us to reach the question as to whether comment may be made where a bona fide privilege does exist and is asserted to preclude reception of such testimony.[3]
Further, this is not a case where a witness is a codefendant (People v Slover, 232 NY 264, 269-270; but cf United States v Zane, 495 F2d 683, 689, cert den 419 US 895 [codefendant had already entered a guilty plea; "missing witness” charge held proper]). Nor was there here an assertion by or on behalf of the witness that he would invoke the Fifth Amendment and refuse to answer questions (Bowles v United States, 439 F2d 536, cert den 401 US 995). And, as already pointed out, since the defendant took the stand and presented affirmative proof in the person of Ms. Orengo, this certainly is not a case where an accused has chosen to stake his chances of acquittal on the prosecution’s case alone. Thus, there not being present here either any constitutional or testimonial privilege, it follows that it was proper to give the supplementary charge.
*101 It also cannot be said that the wife’s testimony was trivial or cumulative. (People v Brown, 34 NY2d 658, 660; State v Davis, 73 Wn 2d 271; McCormick, Evidence [2d ed], op. tit, § 272; cf. People v Valerius, 31 NY2d 51, 55.) The issues here were in sharp dispute. While the defendant and Ms. Orengo both testified that he had not thrown anything out the window and supported his countercharge that the police officers stole his money, the officers’ testimony was diametrically opposite. In these circumstances, the lines of dispute were drawn sharply in terms of credibility and the testimony of the only additional person who was present might have made the difference.
Defendant’s counsel’s statement to the court that the wife would not be called because she had been arrested on an unrelated burglary charge the day before the defense presented its case and because her nervousness would cause her to be a poor witness did not preclude the supplementary charge. The reasonableness of those explanations were for the' triers of fact and, while the court did not instruct the jury to that effect, there was neither an exception or request on that account, nor any attempt to offer the explanatory matter before the Judge in any greater detail than described above, or before the jury at all, as a basis for such a charge. While a court, on its own, may determine that the fact that a witness has an extensive record of prior convictions, and will, therefore, be prejudicially vulnerable to damaging impeachment, constitutes a reasonable explanation, appellant here did not assert that his wife had any prior convictions but only that she had suffered an arrest, which, save for its underlying facts (cf. People v Morrison, 194 NY 175, 177; People v Cascone, 185 NY 317, 334), was not a permitted area for impeachment. (People v McKinley, 39 AD2d 749; Richardson, Evidence [10th ed], op. tit, § 506.)
In sum, in not putting his wife on the stand, the defendant chose not to call a material witness over whom he had control. The rule is that the jury, therefore, was entitled to consider that fact in assessing the strength of the evidence offered by the opposite side, here the People, on the issue which she was in a position to controvert. (Noce v Kaufman, 2 NY2d 347, 353; Gill v Anderson, 39 AD2d 941; Sasmor v V. Vivaudou, Inc., 200 Misc 1020 [Matthew M. Levy, J.].) The supplementary charge, brief as it was, said little more than that the *102 failure to call the wife was a matter the jury could "consider”. It was correct as far as it went. At worst, it was innocuous.
So far as the questions and comments by the Trial Judge are concerned, though they drew unnecessary attention to the fact that the wife was a witness and would not testify and, therefore, it would have been preferable if they had not taken place, we cannot say, especially in view of the restrained way in which the charge itself was phrased, that the defendant was prejudiced. (Cf. People v Hinton, 31 NY2d 71, 76, cert den 410 US 911.)
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, and Cooke concur.
Order affirmed.

. This rule is not changed by our decision in People v Harris (35 NY2d 665), rendered without opinion and of extremely limited precedential value (Matter of Fragale v Armory Maintenance, 24 AD2d 302, 305, affd on opn below 18 NY2d 729), for a reading of the record on appeal in that case will reveal that the defendant had no control over the uncalled witness. A spouse or relative is perforce deemed to be under the defendant’s control (see People v Hovey, 92 NY 554, 559, supra; 1 Wharton’s, Criminal Evidence [13th ed], op. cit, § 149; Fisch, New York Evidence, § 1126).

. Compare the Federal rule. Favorable testimony has been admissible since Funk v United States (290 US 371), yet the rule excluding compelled adverse spousal testimony was retained in Hawkins v United States (358 US 74). Although the Supreme Court’s version of the proposed rules of evidence sought to perpetuate that rule (rule 505; 56 FRD 183, 244), Congress struck it from the final version of the Federal Rules of Evidence (see 2 Weinstein’s, Evidence, par 505[01], pp 505-506).

. Although one writer suggests that New York permits comment upon assertion of the privilege (Richardson, Evidence [10th ed], op. cit, § 457, pp 447-448), at least one lower New York court has held to the contrary (People v Afarian, 202 Misc 199; see, also, discussion in 4 Bender’s, NY Evidence, § 244.02, especially pp 335-336, n 4; § 245.03, subd [8]; see cases collected in Privilege—Presence of Jury—Request to Waive, Ann., 144 ALR 1007; Calling Accused’s Spouse as Witness, Ann., 76 ALR2d 920; Privilege Not to Testify—Comments on, Ann., 32 ALR3d 906; Privileged Testimony—Inference, Ann., 34 ALR3d 775).