THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES SAVAGE, Appellant.

First Department, May 3, 1979

## APPEARANCES OF COUNSEL

*Henry Winestine* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Laurence J. Lebowitz* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney),* for respondent.

### OPINION OF THE COURT

LANE, J.

The complainant, Robert Johnson, was shot by the defendant, James Savage, on January 4, 1977 at about 4 A.M. Savage fled the scene after the shooting and was apprehended on February 21, 1977. He was advised of his rights pursuant to *Miranda v Arizona* (384 US 436). At trial, the interviewing officer, Detective Creegan, testified that the defendant told him that he shot Johnson during a dispute. Savage also named those who were present at the time. He made no exculpatory statements, but did state, "I'm glad I'm caught. I'm tired."

The defendant testified in his own behalf, stating that the complainant made a pejorative comment, grabbed defendant by the collar, and said he was going to take the defendant's money. Defendant, while pulling away from the complainant, reached into his pocket and pulled out a loaded 38-caliber revolver. The complainant allegedly lunged toward the defendant and the gun went off accidentally, causing serious physical injury to the complainant. In sum, Savage claimed the defense of justification.

On cross-examination of the defendant, the following colloquy took place:

"Q. Now, when you say [sic] Detective Creegan in February, before you saw your lawyer, when you saw the police officer, did you tell the police officer that he attempted to rob you?
* * *

"A. I did tell him that.

"Q. You did tell him that?

"A. Yes.

"Q. Were you sitting in the courtroom when Detective Creegan testified?

"A. Yes, I was. Yes, I was.

"Q. Did you hear him testify?

"A. Yes, I did.

"Q. Did you hear me ask the question of him, did he give you any details of the shooting?

"A. Excuse me?

"Q. Did you hear me ask Detective Creegan whether or not you had given him any details of the shooting?

"A. Yes, I heard you.

"Q. And did you hear what Detective Creegan said?

"A. Yes. I heard what he said.

"Q. Did you hear him say anything about a robbery?

"A. No, he didn't.

"Q. And isn't it a fact that he didn't say anything about a robbery because you didn't tell him anything about a robbery?

"A. No. That is not a fact.

"Q. Isn't the first time you started thinking in terms of a robbery was after you spoke with a lawyer?

"A. No, it isn't."

The Assistant District Attorney in his summation to the jury, in obvious reliance on Detective Creegan's testimony, commented upon defendant's failure to present his exculpatory story to the police.

We do not find that the cross-examination or the summation of the District Attorney was improper, and we would therefore affirm. We have recited the essence of the testimony elicited on cross-examination. The summation by the District Attorney was merely fair comment on the testimony of the defendant regarding his defense of justification and the credence it should be afforded by the jury. On this appeal, defendant claims that the cross-examination by the District Attorney inquiring of his silence was violative of his rights as enunciated in *Doyle v Ohio* (426 US 610).

In *Doyle,* narcotics agents and an informer named William Bonnell were working together to arrest certain drug "pushers." Bonnell advised the narcotics agents that he had arranged to buy 10 pounds of marihuana, and that he needed $1,750 to pay for it. The agents were able to collect only $1,320. Bonnell took the money and left for the rendezvous while under surveillance of the narcotics agents. Bonnell met Doyle and Wood. Wood drove away in Bonnell's pickup truck together with Bonnell, and Doyle drove in his own car. They all met at a prearranged location. The transaction took place in a parking lot. Immediately after the transaction, Bonnell left in his truck, and Doyle and Wood left in Doyle's car. Doyle and Wood were stopped a few minutes later by the police, acting on radioed instructions from the narcotics agents. One of the agents—one Kenneth Beamer—arrived on the scene, gave Doyle and Wood their *Miranda* warnings, searched the car (pursuant to a search warrant), and uncovered $1,320.

At the separate trials of Wood and Doyle, it developed that the narcotics agents viewing the parking lot could not see the actual transaction but only saw Bonnell standing next to Doyle's car with a package under his arm. The defendants Doyle and Wood testified that the marihuana was not being sold by Doyle to Bonnell but, rather, Bonnell was selling Doyle 10 pounds of marihuana. Doyle had gone to borrow the necessary money to buy the full 10 pounds but decided later that he only wanted to buy two pounds of marihuana. When he met Bonnell and told him that, Bonnell threw the $1,320 into Doyle's car and took the package of marihuana back to his truck. Wood and Doyle chased after Bonnell but could not find him. They wanted him to explain why he threw the $1,320 into their car. This explanation of the occurrence was not refuted by the direct evidence offered by the prosecution. To offset this problem, the prosecutor on cross-examination emphasized Doyle's failure to mention the frame-up story when the narcotics agent came on the scene. Objection by counsel for the defendant was overruled. The conviction was upheld by the State court. The Supreme Court of the United States reversed the convictions of both Wood and Doyle, ruling that the right to remain silent, which is a Fifth Amendment safeguard, requires as a logical corollary that the exercise of that right cannot be subsequently used by a prosecutor on cross-examination of a defendant at the time of trial to impeach the defendant's explanation offered for the first time at trial.

Ours is not such a case. Savage was advised of his right to remain silent but nonetheless spoke to the police and admitted shooting the complainant. He did not state anything exculpatory. The District Attorney asked a preliminary question on cross-examination about whether the defendant told the police that he was a potential robbery victim. The defendant answered in the affirmative, and it was only then that cross-examination continued regarding the contradictory testimony given by Detective Creegan about statements defendant made when he was arrested. Under these circumstances, it would appear that the exception alluded to in *Doyle v Ohio* (426 US 610, 619, n 11) is applicable; namely, that questioning of a defendant who testified to an exculpatory version of events, and claims to have told the police the same version upon arrest, is permissible. In this case, the cross-examination probed the contradiction between defendant's claim that he

told the police that he defended himself to prevent being robbed and the police testimony that he did not make any such statement.

Finally, it must be noted that were the cross-examination to be deemed error, it would not mandate reversal. The defendant admitted to shooting the complainant, and his exculpatory story of complainant's attempt to rob him, though both self-serving and improbable, was presented to the jury. Under the circumstances, the impeachment impact of the cross-examination, if any, was small. If error was committed, it was harmless error (cf. *People v Musolino,* 54 AD2d 22, cert den 430 US 935).

Accordingly, the judgment of the Supreme Court, Bronx County (SCHACKMAN, J.), rendered September 30, 1977, convicting the defendant, after a jury trial, of the crime of assault in the first degree, should be affirmed.

MURPHY, P. J. (dissenting). Conflicting testimony was presented at trial as to what occurred after the complainant, Robert Johnson, and the defendant, James Savage, left a neighborhood bar at about 4:00 A.M. on January 4, 1977. The complainant and another prosecution witness, Elmore Giles, averred that there was a brief discussion between Johnson and Savage as to whether Johnson would be permitted to accompany Savage to a White Castle for hamburgers. When Johnson turned and began to walk away from the exchange, he was shot by Savage. On the other hand, defendant Savage, who suffers from cerebral palsy, stated that he shot Johnson as the latter attempted to rob him. The defendant maintained that he subsequently panicked and left the scene of the occurrence.

Defendant was apprehended on February 21, 1977. Detective Creegan testified, without objection, that the defendant was given his *Miranda* warnings. Thereafter, the defendant allegedly told the detective that "I'm glad I'm caught. I'm tired." According to the detective's account, the defendant stated that he had shot Johnson on the morning in question. The defendant also related the names of the individuals present at the time of the dispute but he did not detail the nature of the dispute.

The defendant testified on his own behalf; his testimony was limited to the facts surrounding the shooting and the presentation of his exculpatory defense. On cross-examination, the

prosecutor asked the defendant whether he had told Creegan that Johnson tried to rob him. Over defense counsel's objection, the defendant was required to answer and did answer that he had informed Creegan that Johnson attempted to rob him. The prosecutor then pursued the following line of questioning:

"Q. Did you hear me ask Detective Creegan whether or not you had given him any details of the shooting?

"A. Yes, I heard you.

"Q. And did you hear what Detective Creegan said?

"A. Yes, I heard what he said.

"Q. Did you hear him say anything about a robbery?

"A. No, he didn't.

"Q. And isn't it a fact that he didn't say anything about a robbery because you didn't tell him anything about a robbery?

"A. No. That is not a fact.

"Q. Isn't the first time you started thinking in terms of a robbery was after you spoke with a lawyer?

"A. No, it isn't."

In summation, the prosecutor reiterated his belief that the defense of justification was tailor-made to the facts in this case. Ultimately, the jury convicted the defendant of assault in the first degree.

The United States Supreme Court has found that, in view of the fact that an individual has a right to remain silent upon his arrest (Miranda v Arizona, 384 US 436), it would be fundamentally unfair and a deprivation of due process to allow his postarrest silence to be used to impeach an explanation offered at trial (Doyle v Ohio, 426 US 610, 618; People v Arce, 42 NY2d 179, 187; People v Bianculli, 9 NY2d 468, 472). The highest court did state that postarrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation, the Supreme Court noted that the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest (Doyle v Ohio, supra, pp 619-620, n 11).

The Court of Appeals, in a pre-Doyle opinion (People v Rothschild, 35 NY2d 355), also permitted a defendant to be impeached where his postarrest silence was inconsistent with

his defense at trial. Rothschild, a police officer, was indicted for grand larceny and other related charges. Rothschild's defense was that he was not taking a bribe but that he was attempting to "set up" a bribe giver for criminal prosecution. In affirming, the Court of Appeals found that the prosecution properly cross-examined him as to why he had not informed his superiors of the bribe offer, either before or after his arrest.

In this proceeding, Savage did not directly testify that he gave an exculpatory version of the events to Detective Creegan after his arrest. Assuming Creegan's testimony to be true, the detective never even called the defendant's attention to or asked him about the details surrounding the occurrence. *(People v Bornholdt,* 33 NY2d 75, 88.) According to Creegan, the defendant did state that "I'm glad I'm caught. I'm tired." This statement does not express an exculpatory version of the events. It is, at most, an ambiguous statement open to varied interpretation. It was for the jury to determine whether the remark was the utterance of a criminal or an innocent person. From the foregoing discussion, it is clear that the footnote exception enunciated in *Doyle* did not become operative (426 US 610, 619, 620, n 11).

Likewise I would find the principle propounded in *Rothschild* is not controlling on the facts in this case. The defendant's postarrest silence was not inconsistent with his defense of justification. Furthermore, he was under no obligation to reveal that defense prior to trial.

Since serious error was committed in permitting cross-examination and summation on the defendant's postarrest silence *(People v Bennett,* 65 AD2d 801), the judgment of the Supreme Court, Bronx County (SCHACKMAN, J.), rendered September 30, 1977, convicting defendant after a jury trial of assault in the first degree, should be reversed, on the law, and the matter remanded for a new trial.

KUPFERMAN, SULLIVAN and LUPIANO, JJ., concur with LANE, J.; MURPHY, P. J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on September 30, 1977, affirmed.