THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC ROY GLENN, Appellant.

First Department, June 28, 1979

## APPEARANCES OF COUNSEL

*William H. Roth* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Leonard G. Kamlet* of counsel *(Alan D. Marrus* with him on the brief; *Mario Merola, District Attorney),* for respondent.

**OPINION OF THE COURT**

SILVERMAN, J.

Defendant appeals from a judgment of the Supreme Court convicting him after jury trial of assault in the first degree (Penal Law, § 120.10), and sentencing him to an indeterminate term of imprisonment of 5 to 15 years thereon.

Concededly the defendant shot the victim Johnson three times, resulting in injuries to Johnson's lung, liver, colon and a major blood vessel, the inferior vena cava, which caused Johnson to spend 36 days in the hospital, and which, if left untreated, could have been fatal. Defendant's contention, denied by Johnson, was that Johnson "was messing with my woman at the time, feeling her private parts"; that when defendant came to her assistance, Johnson pulled a knife; that defendant stepped back and fired into Johnson's leg once to stop him; that Johnson looked at the wound, "catches an attitude" and came at defendant with a knife and tried to stab him, and the gun went off two more times. The incident took place in a social club in which the "woman" involved, one Theresa Ervin, apparently a girl of 14 or 15 years of age, was serving as a barmaid. Johnson testified that the attack was unprovoked and that there was no knife.

The issue in this case was self-defense. Justification—self-defense—excuses the use of physical force only "to the extent he [defendant] reasonably believes" necessary for defense. (Penal Law, § 35.15, subd 1.) In addition, as the loaded gun as used was obviously "deadly physical force" (Penal Law, § 10.00, subd 11), the defense would fail unless defendant reasonably believed that Johnson was "using or about to use deadly physical force" (Penal Law, § 35.15, subd 2, par [a]) and unless defendant could not with complete safety avoid the necessity for using deadly physical force by retreating (Penal Law, § 35.15, subd 2, par [a]). Thus, regardless of the origin of the incident, justification—self-defense—would not relieve defendant of guilt unless there was a threat of deadly physical force and retreat was not safely available, and he used no more than reasonably necessary force.

The resolution of the questions of fact in the case did not depend solely on the bare statements of the two participants. Circumstantial evidence strongly supported the prosecution's view. (a) To begin with, it is at least unlikely that Johnson, shot in the leg once, facing a man holding a loaded gun pointed at him, would pursue his retreating assailant and

attempt to attack with a knife. (b) As to the existence of the weapons, there is no doubt there was a loaded gun. The defendant conceded it and conceded the shooting; Johnson had the three bullet wounds; and three discharged shells were found on the floor by the police. On the other hand, no knife was ever found. (c) Johnson was clearly wounded. There is no contention that defendant suffered even a scratch from the alleged knife. (d) Johnson's three bullet wounds included one in the back. (e) A police officer testified (and defendant denied) that at the time of arrest defendant said that he had tried to kill Johnson; that Johnson had a knife; and that Johnson had fondled defendant's girlfriend's private parts. That statement, consistent with defendant's testimony about the origin of the fight and the presence of a knife, was hardly consistent with defendant's claims of the defensive use of no more than reasonably necessary force, or that the gun just went off two more times. In the circumstances, it is not surprising that the jury rejected the claim of self-defense.

1. Although the barmaid was apparently actually in the court at one time during the trial, she was not called as a witness. The principal claim of error in the case is that the Trial Judge gave a "missing witness" charge with respect to her failure to testify. As the defendant testified in the case, such a charge could be given in an appropriate case. *(People v Rodriguez,* 38 NY2d 95.) This was such a case. The barmaid according to defendant was involved in the matter; defendant had come to her assistance; presumably she saw the whole affray. She was defendant's "woman"; his "girlfriend". Although defendant had not been in touch with her for four months before the trial, he knew her address, and had spoken to her four months before the trial to inquire about his child. Thus it would appear that she was "favorable to one party [defendant] and hostile to the other." *(People v Rodriguez,* 38 NY2d 95, 98, *supra.)*

The Judge charged the jury: "Now, no Defendant is required to call any witness. However, if you find that the Defendant had control over Theresa Ervin and was close enough to her by relationship and if you further believe that this witness has evidence in her possession which would support the Defendant's version of the case, the strongest inference may be drawn against the Defendant which opposing evidence in the record permits." On appeal defendant argues that this charge was a gross overstatement and that the correct charge, assum-

ing its applicability at all, permits the jury only to infer that the missing witness would not testify favorably to the concealing party. (At the trial the objection was apparently not to the particular version of the missing witness charge, but to the alleged absence of control of the witness by defendant.)

The charge given by the court is obviously taken directly from that approved in *Noce v Kaufman* (2 NY2d 347). In *People v Rodriguez (supra),* in which the court approves the giving of a missing witness charge in a criminal case where the defendant testifies and fails to call a witness favorable to him and under his control, the court said: "The rule is that the jury, therefore, was entitled to consider that fact in assessing the strength of the evidence offered by the opposite side, here the People, on the issue which she was in a position to controvert. *(Noce v Kaufman,* 2 NY2d 347, 353 * * *)" *(People v Rodriguez, supra,* p 101). Thus the Court of Appeals cited *Noce v Kaufman (supra),* as its first authority in support of this statement. This would seem to be some indication that a charge modeled on that in the *Noce* case would be appropriate.

As to the difference between the various forms of the missing witness charge, Richardson on Evidence (10th ed, § 92, pp 67-68) states: "While the authorities agree that, in a proper case, the failure of a party to call a witness will permit an unfavorable inference, there is no such accord in New York as to the precise nature of the unfavorable inference which may be drawn. Some courts have said that the jury may infer that had the witness been called his testimony would have been unfavorable * * * Other courts have held that the jury may not be permitted to speculate as to what the witness would have testified to had he been called; and that the correct rule ·is that the jury may construe the evidence already in the case most strongly against the party who might have called the witness to contradict or explain that evidence * * * The Court of Appeals has expressed the rule as follows: 'where an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits.' Noce v. Kaufman, 2 N. Y. 2d 347, 353 * * * Perhaps the conflict in the cases is more apparent that real."

Fisch on New York Evidence (2d ed, § 1126, p 638) says: "In terms of what is often stated to be the correct rule, *the only*

*inference warranted is that the witness would not have con-
troverted or corroborated material testimony which he was in
a position to controvert or corroborate and the jury may,
therefore, take adverse testimony most strongly against the
party failing to contradict or refute it."* (Emphasis in original.)

In the circumstances, we think that the missing witness
charge was correct.

2. Defendant also objects that cross-examination of him as
to his carrying a loaded gun for two months preceding the
incident and the purposes for which he was carrying it was
improper. We think it was not, for two reasons: (a) Defendant
having testified was subject to cross-examination as to any
illegal conduct. (There was apparently no *Sandoval* motion [34
NY2d 371].) (b) The indictment included a charge of criminal
possession of a weapon in the second degree (Penal Law,
§ 265.03), i.e., that defendant had in his possession a firearm,
to wit, a loaded pistol with intent to use the same unlawfully
against another. Thus the intent with which he was carrying
the gun was a material issue in the case and the District
Attorney could properly ask him what he was carrying the
gun for. The count of criminal possession of a weapon in the
second degree was submitted to the jury in the alternative.

3. It is also claimed that there was a violation of the
attorney-client privilege in that the court overruled the objec-
tions to the District Attorney's questions whether defendant
had spoken to his attorney about the case and whether his
attorney had mentioned to him what the law of self-defense
was. We think that this was indeed a violation of the attor-
ney-client privilege; but we think that it was harmless error.
There was no disclosure of what the attorney had told the
defendant. Whether or not these questions were asked, the
jury would surely assume that in a case in which the only
issue was self-defense, the attorney and client would have
talked about it. And even without such questioning, the
District Attorney could have argued, as he did in summation
(without referring to the defendant's discussion with his attor-
ney), that the defendant's story was an attempt to meet the
requirements of the law of self-defense. The District Attorney
said: "He knew he couldn't beat the gun. He knew and that's
why he had to say my back was up against the wall." This
court has recently affirmed a conviction where precisely such
a suggestion was made on summation. *(People v Savage,* 67
AD2d 562.) The inference that testimony is tailored to meet a

particular rule of law has often been indulged in by courts without direct evidence of a conversation with a lawyer on that question (see, e.g., *People v Quinones,* 61 AD2d 765, 766; *People v Garafolo,* 44 AD2d 86, 88); and the District Attorney could have suggested that possibility to the jury without inquiry as to discussions with the attorney. In the circumstances, and as all that was brought out about conversations with the attorney was matter that the jury would inevitably assume to have happened anyhow, i.e., that the defendant and his lawyer discussed the only issue in the case, we think the error in permitting the question was harmless.

4. Defendant was convicted of assault in the first degree, a class C felony (Penal Law, § 120.10). He was sentenced to an indeterminate term of imprisonment of 5 to 15 years. As defendant has never previously been convicted of a felony, this was the maximum sentence which the law permitted. The crime arose out of an unpremeditated private incident, not out of an attempted robbery or other criminal activity (except, of course, carrying a gun). The defendant's previous criminal record was relatively minor, involving apparently the theft of a car. While the defendant was hardly entitled to praise, we think the case does not call for the absolute maximum sentence which the law permits for a class C felony. Accordingly, we reduce the minimum from 5 years to 3 years.

The judgment of the Supreme Court, Bronx County (SILBERMANN, J.), rendered January 31, 1978, convicting defendant, on jury verdict, of assault in the first degree, and sentencing him to an indeterminate term of imprisonment of 5 to 15 years, should be modified, as a matter of discretion in the interest of justice, and the sentence of the defendant reduced to an indeterminate term of imprisonment of not less than 3 nor more than 15 years, and the judgment should be otherwise affirmed.

SANDLER, J. (dissenting in part). In *People v Rodriguez* (38 NY2d 95), the Court of Appeals reaffirmed the principle that where a defendant comes forward with evidence, "his failure to call an available witness who is under defendant's control and has information material to the case may be brought to the jurors' attention for their consideration" *(People v Rodriguez, supra,* p 98). The court in *Rodriguez* did not squarely address the question primarily raised on this appeal—the nature and form of the instruction appropriately to be given to the jury under the applicable circumstances.

In this case the trial court charged the jury with regard to

the defendant's failure to call a certain witness to testify on the justification defense that "the strongest inference may be drawn against the defendant which opposing evidence in the record permits." In my opinion, this instruction permitted far too strong an inference to be drawn against the defendant, is fundamentally wrong in principle, and, if accepted as an appropriate instruction, would have serious and harmful consequences in the trial of many criminal cases.

Analysis of the issue appropriately starts with the observation from Richardson on Evidence (10th ed, § 92, pp 67-68), quoted in Judge SILVERMAN's opinion for the court: "While the authorities agree that, in a proper case, the failure of a party to call a witness will permit an unfavorable inference, there is no such accord in New York as to the precise nature of the unfavorable inference which may be drawn."

Two formulas, each with variations, have been developed in the New York cases. One in substance provides that a jury may infer that had the witness been called his testimony would have been unfavorable. The other favors an instruction to the effect that the jury may construe the evidence already in the case most strongly against the party who might have called the witness to contradict or explain that evidence. The latter phrasing has apparently become the more accepted one in New York (see *Noce v Kaufman,* 2 NY2d 347, 353; see, also, PJI 1:75), although the "unfavorable inference" version appears to be more widely accepted in other jurisdictions. (See 2 Wigmore, Evidence [3d ed], § 285; McCormick, Evidence [2d ed, 1972], § 272.)

It seems clear that these alternative approaches, with their accompanying variations, have been developed primarily in civil cases. Even with regard to such cases the established charges have come under increasing criticism. Thus, in Fisch on New York Evidence (2d ed, § 1126), the following comment is made with regard to the "strongest possible inference" instruction (p 638): "Strongly condemned as unrealistic and self-defeating, the value of this rule as an intelligible guide has been challenged on the ground that the jury cannot follow and apply the complexities of a charge in which it is embodied. Moreover, it is felt that since the situation requires the use of common experience rather than a mechanical rule the inference created by a failure to call a witness is not capable of being forced into any prescribed formula. It has thus been suggested that counsel be permitted to comment on the failure

to call a witness and that the jury be allowed to draw whatever inference, if any, is deemed warranted."

In his authoritative treatise, McCormick said (§ 272, p 657): "Despite the plenitude of cases supporting the inference, caution in allowing it is suggested with increasing frequency. This counsel of caution is reinforced by several factors. Possible conjecture or ambiguity of inference is often present. The possibility that the inference may be drawn invites waste of time in calling unnecessary witnesses or in presenting evidence to explain why they were not called. Anticipating that the inference may be invoked entails substantial possibilities of surprise."

These observations by leading authorities are of more than academic interest. It is my personal observation that, for the reasons suggested, many experienced Trial Judges in civil cases often find the established instructions far too strong and use other and much less explicit and directive terminology.

Whatever may be the merits of either of the established charges with regard to civil cases, their use against defendants in criminal cases raises disturbing questions. The inescapable result in many criminal cases will surely be to erode effectively the prosecutor's traditional burden to prove guilt beyond a reasonable doubt and to dissuade defendants from testifying or introducing evidence on their own behalf.

In the usual criminal case, as in this one, the defense witness whose failure to testify gives rise to an adverse inference will most often be a relative or a close personal friend. Ironically, the very circumstance that provides a basis for the instruction often reduces significantly and sometimes dramatically the probative value of testimony by that witness.

It is surely a familar observation that juries are not quick to believe testimony offered on behalf of a defendant in a criminal case by a parent, spouse or, as here a girlfriend. Where, as is often the case, the witness is believed by defense counsel to be vulnerable to cross-examination, sometimes on collateral matters, a lawyer may reasonably conclude that a witness on balance would not be helpful even though the witness would in fact give testimony favorable to the defendant.

If the instruction given here is approved, defense counsel will be confronted in many cases with several exceedingly distasteful alternatives: (1) to call a witness whose relationship to the defendant will invite skepticism and whose testimony on balance may be harmful; (2) not to call such a

witness and face the impact of a crushing adverse inference charge by the court; and (3) not to offer any evidence whatever on behalf of the defendant.

I do not believe that the interests of justice will be served by confronting lawyers with these choices.

Nor is the instant case free from the "ambiguity of inference" alluded to by McCormick. It is true that the witness was the defendant's girlfriend at the time the events resulting in the criminal charge occurred. However, the record discloses that he had been in prison for well over a year at the time of the trial. While it appears that he communicated with her by telephone and letter during that period, and may have received visits from her, it is by no means apparent that the relationship at the time of trial was free from uncertainty.

Nor do we learn from the record whether the police and the District Attorney, alerted to her alleged role by the defendant when he was arrested, ever sought to question her and, if so, whether she had answered the questions, and what answers, if any, she had given. In short, here, as in many cases, although the circumstances permit the inference that she was subject to the defendant's control, it is not at all clear that this was indeed the fact.

The principal issue presented on the trial was one of justification. Although there were circumstances that supported the complaining witness' version of the events, as note in Justice SILVERMAN's opinion, the issue was not free from doubt. The testimony of the complaining witness wholly failed to explain why the defendant suddenly started to shoot him, an omission that may well have raised doubts in the minds of jurors as to his credibility on that point and perhaps on others as well.

It was, of course, the People's duty to establish the defendant's guilt beyond a reasonable doubt. As the factual issue was presented to the jury, the effect of the court's charge that the jury may draw the strongest inference against the defendant permitted by opposing evidence (that is, the testimony of the complaining witness) effectively obliterated the prosecutor's burden of proof, and would inevitably do so in any criminal trial in which the missing witness is thought to have testimony pertinent to the central issue.

It seems to me inescapable that the charge used, if it becomes the accepted law, will often result in defendants not

testifying or offering pertinent evidence on their behalf in order to avoid its impact.

The appropriate charge to be used with regard to a defendant in a criminal case seems to me the very one that was used by the trial court in *People v Rodriguez* (38 NY2d 95, 101-102, *supra),* described in the court's opinion as follows: "The supplementary charge, brief as it was, said little more than that the failure to call the wife was a matter the jury could 'consider'. It was correct as far as it went. At worst, it was innocuous."

It is true that in the course of its opinion in *People v Rodriguez (supra),* the Court of Appeals cited *Noce v Kaufman (supra),* and other civil cases in which the "strongest possible inference" charge was used. However, in the *Rodriguez* opinion itself the principle was consistently phrased in terms of the jury's right to consider.

That, in my opinion, is the most that should be said in a criminal case with regard to a defendant. And for reasons set forth above, I believe it a grave error to permit the kind of sweeping inference here charged to the jury.

The defendant's conviction of assault in the first degree should be reversed and the case remanded for a new trial.

All concur except KUPFERMAN, J. P., and MARKEWICH, J., who dissent in part and would affirm the judgment *in toto,* and BIRNS and SANDLER, JJ., who dissent in part in an opinion by SANDLER, J., and would reverse the conviction and remand the case for a new trial, but concur in reduction of sentence.

Judgment, Supreme Court, Bronx County, rendered on January 31, 1978, modified, as a matter of discretion in the interest of justice, and the sentence of the defendant is reduced to an indeterminate term of imprisonment of not less than 3 nor more than 15 years, and the judgment is otherwise affirmed.