THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALVIN TERRY, Appellant.

Fourth Department, December 23, 1981

### APPEARANCES OF COUNSEL

*James P. Harrington* for appellant.

*Edward C. Cosgrove, District Attorney (Deborah N. Sorbini* of counsel), for respondent.

### OPINION OF THE COURT

DENMAN, J.

At approximately 2:30 P.M. on July 20, 1979 Edward Maroney, a tavern keeper, went to a bank at Seneca and Emslie Streets in the City of Buffalo and withdrew $4,000 with which to cash checks for customers. He left the bank with the money in a bag and was about to get into his automobile when two men jumped him. There was a brief struggle during which he saw what appeared to be the barrel of a gun and was hit on the head. He fell to the ground and the men ran away with the money bag. The entire episode lasted one-half minute to two minutes. A

passerby witnessed the incident and, seeing the two men enter an automobile, recorded the license number. The police traced the license to Calvin Kyle who in turn led them to James Jones and defendant.

Defendant was indicted for robbery in the second degree. At the trial Maroney identified defendant as one of his assailants and stated that defendant had wrested the money bag from him, but admitted that he had been bewildered and dazed. Portions of his testimony were inconsistent with other proof, primarily the testimony of Jones and Kyle. Jones testified that he, Kyle and Calvin Terry had planned the robbery, that Kyle had supplied the "get away" car and received $1,000. He admitted that in return for his testimony he had been allowed to enter a guilty plea on another robbery and was granted immunity on this charge. Initially, he refused to identify defendant in the courtroom as Calvin Terry but after being taken into chambers and informed that he did not have immunity from perjury, he identified defendant. Kyle, who had not been indicted, testified that he knew Jones and defendant; that he was in a gas station across from the bank and saw them; and that, as he drove down the street, Jones approached and asked for a ride. He said that Jones had the money bag. He recognized defendant with Jones and defendant later asked him not to testify against him.

Defendant took the stand in his own defense and testified that on that day he had an appointment to get food stamps at the Social Services Agency in downtown Buffalo. His appointment was at 1:30 P.M. but he didn't arrive until approximately 2:00 P.M. and left at "a little after 3:00 o'clock". On the day of his testimony he apparently had gone to the agency and received a notarized statement to the effect that he had kept an appointment at 1:30 P.M. on July 20. He was told, however, that the woman with whom he had the appointment was no longer employed there. Defendant did not know or request her name.

As a result of that testimony the court granted the People's request for a missing witness charge and for permission to comment on defendant's failure to produce the witness. The Assistant District Attorney made the following comments during his summation: "Where, oh

where, oh where is the lady from Social Services, which only two people knew about, Calvin Terry and the woman that gave him his food stamps. Why wasn't she produced? Where is she? Defense has subpoena power. Where is that witness that can verify the times, look at the record, or at least try to, you know, at least take the stand and say I honestly don't recall what time he was there. But, she wasn't called. There was no attempt made to find her." The court then charged as follows: "However, if you find that a witness was in a position to give relevant evidence on the side of the People, on the side of the defendant, and that defendant has offered no reasonable explanation for failing to call such a witness, you may infer, if you deem it proper to do so, that the testimony of the uncalled person would not contradict the opposing evidence or would not support defendant's version of the case. *And you may also draw the strongest inferences against the defendant that the opposing evidence permits.* And in this light you may consider the failure of the defendant to call anybody from the Department of Social Services concerning his presence on the particular day as to which you heard evidence, especially concerning the particular time, and the time stated therein." (Emphasis added.) The jury was out for approximately one hour, returned with a single request, viz., that the missing witness charge be reread and when it was, returned in 11 minutes with a guilty verdict.

As a general rule there can be no comment on a defendant's failure to testify or produce evidence. However, when a defendant elects to present affirmative proof, the court may properly bring to the attention of the jury the defendant's failure to call an available witness under his control *(People v De Jesus,* 42 NY2d 519, 525; *People v Rodriguez,* 38 NY2d 95, 98; *People v Leonardo,* 199 NY 432, 446; *People v Hovey,* 92 NY 554, 560; *People v Glenn,* 68 AD2d 626, 628-630, revd on other grounds 52 NY2d 880; *People v Smith,* 60 AD2d 963). Under the circumstances of this case, however, the prosecutor's comments and the charge were totally improper. First of all, the charge did not include the requirement that the missing witness be under the control of the defendant. That omission was significant inasmuch as there is no question that this

witness was not under defendant's control. The witness sought by this defendant was not even known to him and it was error to allow the prosecutor to suggest that the defendant could have produced her by means of subpoena.

A more compelling problem is presented by the court's instruction that, as a result of the defendant's failure to produce the witness, the jury could "draw the strongest inferences against the defendant that the opposing evidence permits." The type of inference allowed by this charge is impermissible in a criminal case because of its serious ramifications with respect to the presumption of innocence, the People's burden of proof and the potential for speculation with regard to evidence not in the record. Whether an adverse inference may be drawn in a criminal case and, if it may, the degree of the inference permitted, has been the subject of discussion by the courts (see *People v Glenn,* 68 AD2d 626 [dissent by SANDLER, J., pp 631-635], revd on other grounds 52 NY2d 880, *supra; People v Moore,* 17 AD2d 57, 62; see, also, *People v Taylor,* 98 Misc 2d 163) and commentators (McCormick, Evidence [2d ed], § 272; Fisch, New York Evidence [2d ed], § 1126).

The adverse inference rule has developed primarily in civil cases but even there has been the source of a good deal of criticism and confusion. Thus, with regard to the "strongest possible inference" charge employed here, the following comment is illustrative: "Strongly condemned as unrealistic and self-defeating, the value of this rule as an intelligible guide has been challenged on the ground that the jury cannot follow and apply the complexities of a charge in which it is embodied. Moreover, it is felt that since the situation requires the use of common experience rather than a mechanical rule the inference created by a failure to call a witness is not capable of being forced into any prescribed formula. It has thus been suggested that counsel be permitted to comment on the failure to call a witness and that the jury be allowed to draw whatever inference, if any, is deemed warranted." (Fisch, New York Evidence [2d ed], § 1126, p 638.)

Whatever its value in a civil contest, its employment in a criminal trial is wholly inconsistent with the traditional burden of proof and presumption of innocence. Most of the

cases discussed in the treatises are civil in nature and the fact that the rule has wended its way into the criminal law exemplifies how a rule can be taken out of context and misapplied. In discussing the defendant's failure to call a witness in *People v Rodriguez* (38 NY2d 95, 101, *supra),* the court stated that the jury could "consider that fact in assessing the strength of the evidence offered by the opposite side" and as authority referred to three civil cases led by *Noce v Kaufman* (2 NY2d 347). In *Noce* the court stated: "In finding the facts against Kaufman, the Referee properly applied the rule that where an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits" (2 NY2d, at p 353 [citations omitted]). Not only was *Noce* not a criminal trial, it was not a jury trial and the witness was not missing — he was there and had testified. The rule, therefore, arose in a civil context from a discrete set of circumstances. As a result of the reference in *Rodriguez,* however, courts have applied that "strongest inference" rule in criminal cases despite the fact that the charge in *Rodriguez* itself instructed merely that the jury could "consider" the fact that defendant did not call a witness under his control.

The extremely prejudicial effect of applying the rule against a criminal defendant is obvious on the facts before us. The testimony of the victim Maroney, including his identification of the defendant, was vigorously disputed. The credibility of Jones and Kyle, both of whom were self-interested, was suspect. The testimony which purportedly could be obtained from the missing witness was that defendant was at the Social Services Agency at approximately 2 to 3 o'clock on the day in question. Since, in the absence of such testimony, the strongest inference was allowed to be drawn against the defendant, the conclusion was inescapable that he was where the People's witnesses claimed he was, i.e., committing the robbery. Permitting such inference was in direct contravention of the presumption of innocence and obliterated the People's burden of proving defendant's guilt beyond a reasonable doubt. Protection of the integrity of those fundamental principles requires that

the inference may not be invoked against a criminal defendant. We need only note that a different conclusion may be reached when the failure to produce is that of the prosecution (see, e.g., *People v Ramirez,* 73 AD2d 567; *People v Aponte,* 69 AD2d 204, 219). Insofar as comment on a missing witness under a criminal defendant's control is appropriate, we believe the rule should be that employed in *People v Rodriguez* (38 NY2d 95, *supra),* i.e., that failure to call the witness is something the jury may "'consider'" (38 NY2d, at p 102). In view of the erroneous instruction employed here, the judgment should be reversed and a new trial granted. We have considered the other arguments raised by defendant and find them to be lacking in merit.

Simons, J. P., Callahan, Moule and Schnepp, JJ., concur.

Judgment unanimously reversed, on the law, and a new trial granted.