**THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO NIEVES, Appellant**

The defendant's robbery conviction was based solely upon the uncorroborated eyewitness testimony of the complainant, who identified the defendant on the street a year and three months after the crime occurred. The complainant specifically testified at trial that he recognized the defendant as an individual whom he had often seen on a particular street corner as he returned home from work. The defendant, who had held the same job for nearly a decade, testified that he would have been at work at the time the complainant claimed to regularly have seen him on the street corner. Moreover, the defendant and two alibi witnesses testified that on the night of the crime, he was at a party located a substantial distance from the scene of the robbery.

Initially, we note that although the People's evidence was not overwhelming, the complainant's testimony, if believed, fully established the defendant's guilt. We must therefore

reject the defendant's claim that the evidence adduced at trial was insufficient as a matter of law (see, Jackson v Virginia, 443 US 307, 319; People v Contes, 60 NY2d 620).

Nevertheless, a reversal of the defendant's conviction is warranted based upon the court's instructions to the jury at the end of the case.

First, over the defendant's objection to the People's request, the trial court gave a missing witness charge as to the defendant's wife, who was allegedly with the defendant on the night of the crime and who was available to testify, but was not called as a witness. However, it is well established that a missing witness charge should not be given if the prospective testimony would be merely cumulative (see, People v Wilson, 64 NY2d 634, 635-636; People v Rodriguez, 38 NY2d 95, 98). Here, the testimony of the defendant and his two alibi witnesses was consistent with respect to the defendant's whereabouts at the time the crime was allegedly committed. Thus, it cannot be said that the testimony of the defendant's wife would have added anything material to his alibi defense. Accordingly, it was reversible error for the court to have given a missing witness charge with respect to the defendant's wife.

In addition, the court's supplemental charge to the deadlocked jury was improper. The instruction with respect to the jurors' duty to reconcile their differing views was apparently direct only at the jurors who were in favor of acquittal (see, People v Diaz, 66 NY2d 744; People v Robinson, 84 AD2d 732). Further, the court repeatedly urged the jurors to attempt to reach a verdict, but only fleetingly alluded to the jurors' duty not to abandon their consciously held beliefs (see, People v Perfetto, 96 AD2d 517; People v Ali, 65 AD2d 513, affd 47 NY2d 920). A charge "which prod[s] jurors through prejudicial innuendos or coerce[s] them with untoward pressure to reach an agreement" may very well tilt the scales against a defendant at this crucial point in the jurors' deliberations (People v Pagan, 45 NY2d 725, 726-727). Although no objection was taken to the supplemental charge, the doubts raised by the identification testimony in this case require a reversal of the conviction on this ground in the interest of justice (cf. People v Karamanites, 104 AD2d 899, 901-902). Brown, J. P., Lawrence and Kooper, JJ., concur.

Rubin, J., dissents and votes to affirm the judgment appealed from, with the following memorandum: The majority concedes that the complainant's testimony, which the jury credited, was legally sufficient to establish the defendant's

guilt. I concur with that finding. However, the majority would reverse because the court gave a missing witness charge with respect to the defendant's wife, who was present in the courtroom at trial, for the reason such testimony was allegedly merely cumulative with reference to defendant's alibi defense. With the latter, I disagree.

The critical issue here is the identification of the defendant by the complainant as one of the persons who robbed him on January 31, 1982, at or about 9:30 P.M. The defendant, to counteract such testimony, asserted an alibi defense.

The defendant testified, insofar as pertinent to this defense, that he was 39 years old and lived with his wife and four children in the Bushwick section of Brooklyn. On the night of the crime, he, his wife and his four children spent the entire night at a party at the home of his friend, one Maria Lara, in East New York, which is located a good distance from the scene of the crime. Specifically, he stated that he had been at the party from approximately 6:45 P.M. until 5:00 or 6:00 A.M. the following day, and that he left only once, briefly, to purchase cigarettes. The defendant denied ever having known or seen complainant Colon prior to his arrest, and denied participating in the crime; he admitted knowing the other alleged participant in the crime, one "Tango", but described him as a neighborhood junkie.

The defense also called two alibi witnesses, Lirio Colon (not related to the complainant), and Maria Lara, who claimed to have known the defendant from when they lived in the same Bushwick neighborhood. Ms. Colon testified that 50 to 60 people attended the party, held at the home of Ms. Lara. The party was supposedly in celebration of Ms. Colon's birthday (January 27) and the baptism of her first grandchild, which had taken place earlier on that day. Both women testified to having seen the defendant at various times over the course of the evening. However, there were certain discrepancies in their testimony. They disagreed whether the defendant brought his children to the party. More significantly, the date of the party was in dispute. According to them, the party was not held on January 27, but was rescheduled for January 31 (the date of the robbery), as a combined celebration of Ms. Colon's birthday and the baptism of her first grandchild. The People assert that Ms. Colon had to be "clairvoyant" to know on January 27 that the baby would be born on January 31, and that the infant would be baptized the same day because it would be born jaundiced, requiring the emergency baptism for fear the child would not live. Yet, according to Ms. Colon, she

invited the defendant to the party when she met him on January 30, before the baby was born, and before it was known that an emergency baptism would have to be performed.

Under these circumstances, the trial court did not err in giving the missing witness charge as to the defendant's wife, who was present in the courtroom during the trial. Although the defendant had no burden to come forward with alibi evidence, once he did so, his failure to call an available witness to support the alibi could be brought to the jury's attention inasmuch as it appeared that the witness, the defendant's wife, would be favorable to him and hostile to the prosecution *(see, People v Wilson,* 64 NY2d 634, 635-636; *People v Rodriguez,* 38 NY2d 95, 98).

While ordinarily a court may not comment upon a defendant's failure to testify or otherwise to come forward with evidence, once a defendant does so, a defendant's failure to call an available witness who is under the defendant's control and has information material to the case may be brought to the jurors' attention for their consideration *(see, People v Rodriguez, supra,* p 98). A spouse or relative is deemed to be under the defendant's control *(People v Rodriguez, supra,* p 98, n 1; *People v Hovey,* 92 NY 554, 559), and thus not equally accessible to both parties, but favorable to the defendant and hostile to the People.

Furthermore, the wife's testimony would not be solely cumulative and trivial *(see, People v Wilson, supra,* p 636). While the defendant and his two alibi witnesses were consistent in their testimony as to his whereabouts on the night of the crime, their testimony raised a serious doubt as to whether the defendant's wife and children actually attended the alleged party, and, if such party did occur, the date thereof, and the occasion for celebration. The defendant's wife was the only other available witness who could give such answers.

As pointed out in 1 Wharton's Criminal Evidence § 149 (at 252-253):

"One of the factors which is determinative of the question whether the failure of a party to call a witness will justify an inference or presumption that the testimony of such witness would be adverse to that party is the relationship which the potential witness bears to the parties. The logical inference is that a party would be likely to call as a witness a person bound to him by ties of interest or affection unless he has reason to believe that the testimony given would be unfavor-

able, and that a party closely connected with the witness would be able in the ordinary case to determine in advance with relative ease what his testimony would be if he were called.

"Thus, an unfavorable inference will ordinarily arise when a husband or wife fails to call the spouse as a witness, except as qualified by the statutes creating a privilege as to such testimony or rendering the spouse incompetent to testify against the husband or wife" *(see also,* Relationship Between Party and Witness as Giving Rise to or Affecting Presumption or Inference From Failure to Produce or Examine Witness, Ann., 5 ALR2d 893).

Since the defendant's wife's testimony would have been unprivileged, the court properly gave a missing witness charge as to the defendant's failure to call her as a witness even though she was present in court during the trial *(see, People v Rodriguez, supra,* p 99).

Lastly, the contention that the court's supplemental charge to the deadlocked jury was coercive and unbalanced has not been preserved for appellate review *(see, People v Thomas,* 50 NY2d 467, 471; *People v Duncan,* 46 NY2d 74). Although the charge was not ideal, the Trial Judge did explain that his instructions to continue deliberations "does not mean that a verdict must be reached. It does mean that every effort must be made by you, consistent with your convictions, to arrive at a verdict". In my assessment, the over-all effect of the supplemental charge was to remind the jurors of their obligations and the importance of reaching a verdict *(see, People v Sharff,* 45 AD2d 666, *affd* 38 NY2d 751; *People v Ashenden,* 92 AD2d 898). Accordingly, the charge was not coercive. Furthermore, the significant lapse of time between the supplemental charge and the verdict belies a claim that it was coercive.