People v Calixte (2024 NY Slip Op 04079)

People v Calixte

2024 NY Slip Op 04079

Decided on July 31, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 31, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
PAUL WOOTEN
LARA J. GENOVESI
LOURDES M. VENTURA, JJ.

2020-03069
 (Ind. No. 1512/17)

[*1]The People of the State of New York, respondent,
v
Joseph Calixte, Jr., appellant.

Jerald S. Carter, Garden City, NY, for appellant.
Anne T. Donnelly, District Attorney, Mineola, NY (Jason R. Richards and Michael J. Balch of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Robert A. Schwartz, J.), rendered February 13, 2020, convicting him of conspiracy in the second degree and criminal possession of a controlled substance in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing pursuant to a stipulation in lieu of motions, of the suppression of physical evidence.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Nassau County, for a new trial.
The defendant was indicted for, inter alia, conspiracy in the second degree and criminal possession of a controlled substance in the first degree based upon his alleged involvement in a drug-trafficking operation. Following a suppression hearing, the Supreme Court denied suppression of, among other things, drugs recovered from the defendant's vehicle.
On the morning of October 18, 2019, a Friday, the jury commenced deliberations, and the alternate jurors were excused later that day. On October 21, 2019, a Monday, jury deliberations were adjourned to the following day due to the unavailability of a juror, and the defendant consented to proceed with 11 jurors.
On the morning of October 22, 2019, a Tuesday, jury deliberations resumed for a second day. During the afternoon on that date, the jury submitted a note stating the following: "We the Jury after intense discussion and deliberation, are unable to come to an unanimous decision on both counts/either count." In response, the Supreme Court encouraged the jury to continue trying to reach a unanimous verdict, and the jury resumed deliberations.
On the morning of October 23, 2019, a Wednesday, jury deliberations continued for a third day. During the afternoon on that date, the jury submitted a note stating the following: "After additional deliberation each juror spoke at length to review the evidence and thought processes in evaluating that evidence. Our discussions have been thorough, but we have concluded that we are deadlocked, and will not be able to deliver a unanimous decision. This is not an impasse. We do [*2]not believe that further analysis of the law and evidence will change any juror's conclusion." In response, the Supreme Court issued a modified Allen charge (see Allen v United States, 164 US 492) to the jury, which then resumed deliberations.
On the morning of October 24, 2019, a Thursday, jury deliberations continued for a fourth day. On that date, the jury submitted a note stating that it was "hopelessly deadlocked on both counts," that "[t]he jurors are standing firm on their individual convictions" and "[a] unanimous decision would only be able to be achieved by the abandonment of those very convictions," and that "[a]t this point any change in their decisions would be untrue and unjust." In response, the Supreme Court issued another modified Allen charge, which included the following remarks: "when I read your note I get the sense that you're telling me that the jurors are standing firm. What that means to me is that some of you are locked into your positions and you're fixed in those positions and inflexible and that's contrary to what jurors have to do during jury deliberations"; "when you were selected as jurors you promised me that you would deliberate and discuss your views with your other jurors, so if you refuse to deliberate or close off your mind then you're violating your promise and your oath to me"; and "everybody has invested a lot of time and effort into this case." The jury then resumed deliberations and, later that same day, returned a unanimous verdict finding the defendant guilty of conspiracy in the second degree and criminal possession of a controlled substance in the first degree.
Contrary to the defendant's contention, the Supreme Court properly denied suppression of the physical evidence recovered from his vehicle. "Pursuant to the automobile exception to the warrant requirement, a warrantless search of a vehicle is permitted when the police have probable cause to believe the vehicle contains contraband, a weapon, or evidence of a crime" (People v Rodriguez, 211 AD3d 854, 856 [internal quotation marks omitted]). Here, the court properly found, upon crediting the testimony of a police investigator elicited at the suppression hearing, that the police had probable cause to believe the defendant's vehicle contained contraband or evidence of a crime (see People v Tieman, 112 AD3d 975, 976; People v Washington, 108 AD3d 578, 579). Further, since a subsequent search of the defendant's vehicle was conducted "'reasonably close in time and place to the point of arrest, . . . there was no requirement that the police further delay the search to obtain a warrant'" (People v McKinley, 134 AD3d 519, 519, quoting People v Blasich, 73 NY2d 673, 681).
Furthermore, contrary to the defendant's contention, the verdict of guilt was not against the weight of the evidence. In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's contentions that the Supreme Court improvidently exercised its discretion in declining to discharge the jury based on jury deadlock and issued coercive instructions to the jury are unpreserved for appellate review, as the defendant neither moved for a mistrial nor objected to the instructions given by the court (see CPL 470.05[2]; People v Smith, 135 AD3d 970). Nevertheless, we reach the defendant's contentions in the exercise of our interest of justice jurisdiction (see People v Nieves, 124 AD2d 603).
"'Generally, the declaration of a mistrial due to a deadlocked jury is a matter of discretion for the Trial Judge, who is in the best position to determine whether a mistrial is required under the circumstances of the case, and this decision must be accorded great deference'" (People v Francis, 74 AD3d 1088, 1089, quoting People v Sanders, 51 AD3d 825, 825 [internal quotation marks omitted]; see CPL 310.60[1][a]). In assessing the trial court's exercise of its discretion, this Court should consider: "'(1) the length and complexity of the trial, (2) the length of the jury's deliberations, (3) the extent and nature of communications between the trial court and the jury, and (4) the potential effects of requiring the jury to engage in further deliberations'" (People v Francis, 74 AD3d at 1089, quoting People v Wincelowicz, 258 AD2d 602, 603). "A hopelessly deadlocked [*3]jury presents the 'classic basis for a proper mistrial'" (Matter of Jeffrey v Firetog, 45 AD3d 770, 770, quoting Arizona v Washington, 434 US 497, 509).
Under the particular circumstances of this case, the Supreme Court improvidently exercised its discretion in declining to discharge the jury and declare a mistrial (see People v Reed, 230 AD2d 866, 867). The jury sent its third note regarding deadlock on the fourth day of deliberations, which not only stated that the jurors were "hopelessly deadlocked," but also that "[a] unanimous decision would only be able to be achieved by the abandonment" of the jurors' "firm . . . convictions," and that "any change in their decisions would be untrue and unjust" (cf. People v Francis, 74 AD3d at 1089). Thus, the jury unequivocally informed the court that any unanimous verdict would be the result of jurors abandoning their genuine beliefs about the defendant's guilt or innocence in order to achieve a unanimous verdict, which demonstrated that it would have served no purpose to provide additional instructions to the jury to continue deliberating (see Matter of Jeffrey v Firetog, 45 AD3d at 770-771). Moreover, portions of the court's instructions delivered after that note were potentially coercive, including the court's statements that "some of you are locked into your positions and you're fixed in those positions and inflexible and that's contrary to what jurors have to do during jury deliberations," and that "when you were selected as jurors you promised me that you would deliberate and discuss your views with your other jurors, so if you refuse to deliberate or close off your mind then you're violating your promise and your oath to me" (see People v Patterson, 65 AD3d 705, 706). Notably, the jury returned a unanimous verdict later on the same day the court gave those instructions. Thus, under the circumstances, the court should have discharged the jury and declared a mistrial.
Accordingly, we remit the matter to the Supreme Court, Nassau County, for a new trial.
IANNACCI, J.P., WOOTEN, GENOVESI and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court