■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERT TORRES, Also Known as ALBERTO MUNIZ, and JOSE GONZALEZ, Appellants.— Appeals by defendants from two judgments (one as to each of them) of the Supreme Court, Kings County, both rendered September 10, 1976, convicting each of them of assault in the first and second degrees, and possession of weapons, etc., as a felony, upon a jury verdict, and imposing sentences. Judgments reversed, on the law, and new trial ordered. The defendants were deprived of a fair trial by an accumulation of numerous acts of prosecutorial misconduct and rulings of the court that seriously impaired presentation of the defense. For our purposes, we need focus on only two points, one of which relates to the trial and the other to the *Wade* hearing

which preceded it. During the trial the prosecutrix was permitted to show in her cross-examination of the defendants that Torres was a member of the street gang known as "The Justices of Brooklyn" while Gonzalez had been a member for two months. Each defendant denied participation in any acts of violence that may have been committed by the gang and, on redirect, Torres declared that the "Justices" were participating in some Federally funded programs. Nevertheless, the prosecutrix took every available opportunity to mention the gang, not only in cross-examining the defendants but in examining other defense witnesses as well. Nothing in the record suggests any connection between the defendants' membership in the "Justices" and the crimes for which they were being tried. The prosecution's theory was that when the defendants shot the complainants they were acting as friends of one Angel Rivera, not as gang members. Questions concerning gang membership were therefore collateral and, at most, admissible as attacks on the credibility of the defendants and their witnesses and nothing more. The extent of cross-examination designed to impeach credibility is a matter largely left to the trial court's sound discretion (People v Sorge, 301 NY 198, 201-202). However, there is no rule of evidence that permits a prosecutor to show that a defendant is a member of an organization and then impeach him with the alleged illegal, immoral or vicious acts of that organization. That is exactly what the prosecution did here. The initial questions concerning membership in the gang were not asked as a prelude to showing that the defendants had committed illegal, immoral or vicious acts as gang members. The defendants denied participating in any such acts. The prosecutrix, not content to show gang membership alone, then began to ask provocative questions about what the gang did. Among other things, the prosecutrix asked Torres: "Isn't it a fact that anybody who messed with the Justices or had any problem with the Justices was burned out?" The question was particularly "cutting" since there had been testimony earlier from an officer that he had seen the house of one of the prosecution witnesses "burned down" a few days after the shooting. The prosecutrix also asked on recross: "Were you aware of the fact that on July 4, 1974 two members of the Justices killed a non-gang member through a commission". Although objections to this question were sustained, the damage had already been done. The issue of membership in the "Justices" was a mainstay of the prosecution's attempt to discredit the defendants and their witnesses. Not only did the prosecutrix ask the defendants about gang membership, but asked other key defense witnesses about the gang as well. One female witness, for example, was asked if she was aware "that there are female members of the Justices' gang". The prosecutrix also made use of the defendants' gang membership during her summation. She said: "Now, he said that he belonged to a club, the social club. He called it a club. This is the club that fights with chains, knives, bottles and sometimes guns. This peaceable man, these two peaceable men,' that is the club they belong to. Now, visualize that the club is going out to fight with chains, knives, bottles and sometimes guns and these two were dancing with the girls." The court permitted the prosecutrix to continue along this line, over objections, while stating that the underlying facts necessary to support the inference had not been established. We conclude that the attempt to impeach the defendants through the alleged acts of an organization with which they associated constitutes reversible error in this case, in which the credibility of the witnesses was critical. The only other issue which we reach is the matter of Pedro Adorno's in-court identification of Jose Gonzalez which should not have been permitted in view of what was revealed at the Wade hearing.

While Adorno, one of the People's witnesses, was not formally asked to come to the precinct to identify Gonzalez in a lineup, he arrived with Antonio and Carmelo Pagan when they appeared for the purpose of making formal identifications. After the Pagans had each identified Gonzalez, Adorno was allowed to see the lineup in Carmelo's presence and Carmelo pointed Gonzalez out to Adorno as the man he identified. The dangers inherent in permitting one witness to identify a defendant in the presence of another witness have already been noted by this court *(People v Leite,* 52 AD2d 895). As a practical matter, the presence of Carmelo Pagan turned Pedro Adorno's view of the lineup into a showup. A review of the rest of Adorno's *Wade* hearing testimony fails to provide clear and convincing evidence that he saw Gonzalez' face on the evening of the shooting. In the absence of such evidence, Adorno's in-court identification of Gonzalez should not have been permitted at the trial (see, generally, *People v Ballott,* 20 NY2d 600, 606-607). Lazer, J. P., Gulotta, Cohalan and Martuscello, JJ., concur.