■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MACK BARNES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Dowd, J.), rendered June 20, 1980, convicting him of robbery in the second degree and robbery in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered on the present indictment solely with respect to the count of robbery in the second degree and indictment otherwise dismissed without prejudice to the People to re-present any appropriate charges to another Grand Jury (*People v Beslanovics*, 57 NY2d 726). This appeal arises from a retrial of a robbery indictment accusing defendant of participation in two incidents involving a single victim. According to the victim, she entered the elevator on the eighth floor of her apartment building in order to descend to the laundry room. Inside the car she found two unfamiliar young men. The taller man had a knife and demanded her purse. She turned it over to him, asking that he spare her because she was five months pregnant. The shorter man (defendant) took the purse from the taller man and punched the victim in the abdomen before they left the car on the fourth floor. This happened on December 18, 1976. Less than two weeks later, on December 30, 1976, she was robbed a second time by the same pair as she was making a telephone call to a friend after cashing a check and placing the proceeds in her mitten a few blocks from her apartment building. This time one of the pair put an object to her side and demanded her money, and they made off with the mitten and its contents after knocking her to the ground and beating her. The victim's testimony was not free from difficulties. An investigating officer testified that during questioning on January 10, 1977, the victim said defendant participated in both attacks but she failed to indicate that his accomplice had been the same on both occasions. The victim also said she may have informed the police that defendant was five feet, four inches tall, and in fact the height of the shorter perpetrator was recorded as that measure; nevertheless, at the first trial the victim characterized defendant's height as being five feet, nine inches, and in fact his height was either five feet, nine inches, or five feet, ten inches. Furthermore, on retrial the victim disclaimed the ability to estimate the difference in height between the two perpetrators, although she had estimated a three- to four-inch difference during the earlier trial. The victim did not identify defendant to the police until nearly seven months after the robberies when a housing police detective inserted his photograph into a photo album of some 75 to 100 photographs that he had shown to her some five to eight times in the interim. It was the officer's prejudicial testimony on cross-examination, taken cumulatively, that deprived defendant of a fair retrial. The detective, a 21-year veteran about to retire from the housing police force, persistently volunteered information irrelevant to the issue of defendant's innocence or guilt of the charges being retried. When asked whether he was prompted to insert defendant's photograph into the album because he had "received a description" he said no, but volunteered that

in fact he had received a description; when asked if he had received the description from someone other than the victim, he answered that someone else had informed him that defendant was the robber; and, on being asked again if someone had given him a description, he further volunteered that someone had given him a nickname. The witness could not recall the name of this informant or when during the seven-month period he had obtained this information. He also testified that he had traced the nickname to defendant through a nickname file, conceding that there was no official file but merely a file that an individual officer maintained; he was impeached, however, by his testimony at defendant's first trial that he had obtained defendant's real name from an informant. The detective also stated, when asked on direct what action he took after the victim identified defendant's photograph, that he went to Brooklyn Criminal Court. When asked how many photographs he would add to the album each time he showed it to the victim, he volunteered that he would insert however many he received from police headquarters. When asked about the victim's descriptions of the robbers in the second, i.e., December 30, case, the detective volunteered that there was a third incident involving a different victim. Given the close issue of identification in this case, such prejudicial testimony by an experienced police officer cannot be deemed harmless, and a new trial is warranted. In passing, it is appropriate to note that defendant's double jeopardy argument is not well taken. It is true that of the three robbery counts arising out of the December 18 incident defendant was acquitted on two of them after the original trial, and that all three counts included an element of his acting in concert with another person. It is also true, however, that defendant was convicted on one of these counts, upon the trial court's instruction that included the "in concert" element but distinguished between acting in concert with a person actually present and with a person not present. The court stated in relevant part that: "The fifth element of robbery in the second degree which was in the second count dealt with acting in concert, being aided and abetted by another person. Here the fifth element is (and it's not necessary to show that there was another person there) 'causes physical injury to [the victim] who was not a participant in the crime' and that *either he or another participant in the crime* did cause physical injury". (Emphasis supplied.) Therefore, the jury's acquittal after the first trial on two counts arising from the December 18 incident did not preclude the People from proving on retrial that defendant had acted in concert with another during the robbery. Accordingly, the judgment must be reversed. Lazer, J. P., O'Connor, Brown and Rubin, JJ., concur.