■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEC BOXILL, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Egitto, J.), rendered June 30, 1983, convicting him of robbery in the first degree (four counts) and robbery in the second degree (four counts), upon a jury verdict, and imposing sentence.

Judgment affirmed.

According to the evidence adduced at the trial, on November 7, 1981 the defendant and four other men, each armed with a sawed-off shotgun, stole property from four individuals as they were entering an automobile. During the robbery, defendant concentrated on the lone female victim, Gladys Brison. Ms. Brison testified that defendant stood directly in front of her with his knees actually touching hers, and his gun pointing at her side. After defendant announced the stickup, Ms. Brison gave defendant her pocketbook. He then demanded her chain, gold ring, a bracelet and a pair of earrings, all of which Ms. Brison gave him. During this period of 5 to 10 minutes, Ms. Brison was looking at defendant's face. Sometime after the robbery, Gladys Brison identified the defendant in a lineup at the local police

precinct and, at trial, she made an in-court identification of the defendant as the person who robbed her.

On this appeal, defendant presents a number of arguments for reversal. However, only one of the issues merits discussion, namely, whether defense counsel's eliciting of a statement during the cross-examination of one of the arresting detectives, that defendant had been part of a youth gang, requires a reversal. The People's case consisted of the testimony of the four victims of the crime. The defendant, on his part, claimed that Ms. Brison had mistakenly identified him. Through the testimony of his father and two other witnesses, defendant tried to establish that he could not have committed the robbery because he was at home at the time it occurred. Defendant also tried to establish that he could not have been one of the robbers because the victims were robbed by people without glasses and he regularly wore glasses. He introduced the testimony of his optician in support of the latter defense. On their rebuttal case, the People produced Detective Ronald Donahue who testified that he knew defendant for more than 10 years and that during that time he had seen defendant both with and without his glasses. The detective testified further that when defendant was arrested for the subject crimes he was not wearing his glasses but was carrying them with him. As indicated above, the statement which forms the crux of one of defendant's arguments on appeal was uttered during defense counsel's cross-examination of the People's rebuttal witness. On cross-examination, defense counsel endeavored to persuade the jury that Detective Donahue harbored some sort of grudge against the defendant and, as a result, had been harassing him during the past 10 years. The statement of which defendant complains came out as follows:

"Q Det. Donahue, were you harassing Boxill?

"A No, I was not.

"Q Isn't it a fact, Det. Donahue, that in a sense in the 71st precinct you had it in for Boxill?

"A I had it in for Boxill, no, not at all.

"Q Well, these conversations you had with him on Bedford Avenue and so forth and so on, how many times did you say you did that?

"A I don't recall how many times.

"Q More than ten?

"A I don't know if I had that many or not. Maybe ten times over ten years, conversations with Boxill. That's a fair figure.

"Q Ten times? Ten times? Walking down the street?

"A Not just walking down the street. In the course of my investigation he was part of a gang when I first met him, a youth gang that was constantly in trouble with grand larceny, shootings, robberies and so forth.

"Q He was?

"A He was part of a gang, yes".

Clearly, it was defense counsel's own line of inquiry which was designed to provoke Detective Donahue to anger, that led to the detective's answer. Not satisfied with the detective's response that he had conversed with defendant on about 10 occasions in 10 years, defense counsel pressed on with this broad and belligerent question: "Ten times? Ten times? Walking down the street?" When the detective then explained that his past conversations with defendant had not come about merely because the two men happened to have been walking down the street, but because defendant was part of a youth gang, defense counsel persisted in this antagonistic mode of questioning by asking: "He was?" In denying defense counsel's motion for a mistrial based on the detective's testimony that defendant was a member of a youth gang, Criminal Term pointed out that defense counsel had been responsible for the detective's answer because he had pressed the detective on the issue of his alleged harassment of defendant.

While this court has held that in the absence of a connection between gang membership and the crime or crimes for which a defendant is being tried, the prosecutor's questions as to gang membership are improper (*see, People v Stewart,* 92 AD2d 226, 229; *People v Torres,* 72 AD2d 754), and that it is wrong for a policeman to persistently volunteer information on cross-examination (*see, e.g., People v Barnes,* 96 AD2d 909), we are not persuaded that the making of one statement which may not have been necessary, in frustrated response to defense counsel's persistent, provocative questions on cross-examination, can be classified as error of sufficient magnitude to require a reversal of defendant's conviction. Assuming, arguendo, that Detective Donahue's statement, although provoked or invited, constituted error, the error was harmless since, viewed against the background of the overwhelming evidence of defendant's guilt, there is no " 'significant probability * * * that the jury would have acquitted the defendant had it not been for' " the detective's answer (*People v Johnson,* 57 NY2d 969, 970; *People v Crimmins,* 36 NY2d 230, 242).

We have considered the remaining contentions of the defendant and find them to be without merit. Accordingly, the judgment appealed from should be affirmed. Lazer, J. P., Mangano and Niehoff, JJ., concur.

Gibbons, J., dissents and votes to reverse the judgment appealed from and order a new trial, in accordance with the following memorandum: As the majority in this case effectively implies, it was improper for the People's rebuttal witness, Detective Donahue, to respond to defense counsel's legitimate attempts to establish whatever bias he may have harbored against the defendant by "volunteering" that when he first met the defendant "he was part of a * * * *youth gang* that was constantly in trouble with *grand larceny, shootings, robberies and so forth"* (emphasis supplied; *see, People v Barnes,* 96 AD2d 909; *see also, People v Stewart,* 92 AD2d 226; *People v Gadsden,* 80 AD2d 508; *People v Torres,* 72 AD2d 754; *cf. People v Jamerson,* 99 AD2d 816).

The only point in issue during this portion of the cross-examination was the accuracy of the detective's testimony regarding his observation of the defendant on several occasions during the preceding 10 years when the latter had not been wearing his glasses. Since the defense in this case was specifically predicated on the theory of misidentification, it was perfectly proper and necessary for defense counsel to attempt to examine the basis upon which the detective was able to so testify. The defendant, it should be noted, had already presented ample testimony regarding his routine use of glasses, and when the detective maintained that he had observed the defendant without them on numerous occasions, it was only natural for defense counsel to attempt to inquire as to why the detective would have had occasion to note the defendant's appearance on those prior occasions, and whether or not he harbored any prejudice toward the defendant. This is all that counsel was attempting to do in the line of questioning which resulted in the outburst which figures so prominently in this appeal, and it in no way furnishes an adequate explanation or justification for the intemperate, unwarranted and highly prejudicial remarks of the detective, which tended to impute wholly unrelated criminal activity to the defendant, thus diverting the jury's attention from the only real issue in the case (*cf. People v Molineux,* 168 NY 264).

The foregoing is, in my view, legally sufficient to constitute a denial of the defendant's preeminent right to a fair trial (*see, People v Crimmins,* 36 NY2d 230, 238), and is rendered all the more objectionable by the court's further error in instructing the jury, over defendant's objection, that the latter's failure to call two additional, potential alibi witnesses could be "considered" by the jury in assessing the evidence (*see, People v Rodriguez,* 38 NY2d 95). Under the circumstances of this case, such testimony

could only have been regarded as cumulative, since the defendant, his father, his common-law wife and a friend of the family had already testified regarding the defendant's presence at home during the operative period of time. It is well established that a party's failure to call a potential witness may only give rise to a "missing witness" charge where the witness in question is both under the control of the recalcitrant party and is in a position to give material, noncumulative evidence on his behalf (*see, People v Almodovar,* 62 NY2d 126, 133; *People v Rodriguez, supra; People v Brown,* 34 NY2d 658, 660; *People v Valerius,* 31 NY2d 51; *People v Falterman,* 74 AD2d 584; *People v Watkins,* 67 AD2d 717). No such circumstance is presented in the case at bar.

Finally, although admittedly not objected to at the trial, it is my further belief that the prosecutor's wholly unwarranted and improper reference to the defendant's use of an alias on a prior occasion, both during his cross-examination of the defendant and in summation (*see, People v Lindo,* 85 AD2d 643), only operated to exacerbate the foregoing errors, and to render the prospect of a dispassionate consideration of the trial evidence by the jury problematic at best. Moreover, unlike my brethren of the majority, I cannot regard the existence of these errors as harmless, since "[t]he right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" (*People v Crimmins,* 36 NY2d 230, 238, *supra*). In addition, where, as here, the identification evidence is predicated solely upon the testimony of a lone complainant who had previously failed to pick the defendant's picture out of a photo array, and where the issue of identity has been hotly contested, e.g., by the defendant's own testimony and the interposition of a strong alibi defense, it simply cannot be said that the evidence of guilt was overwhelming (*see, People v Cobb,* 104 AD2d 656; *see also, People v Hall,* 82 AD2d 838).