■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS J. MATTIACE, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Baker, J.), rendered July 13, 1988, convicting him of criminal possession of a forged instrument in the second degree, upon a jury verdict, and sentencing him to an indeterminate term of 1⅓ to 3 years' imprisonment, and imposing a fine of $10,000.

Ordered that the judgment is modified by reducing the fine to $5,000; as so modified, the judgment is affirmed, and the matter is remitted to the County Court, Nassau County, for further proceedings pursuant to CPL 460.50 (5).

On appeal, the defendant asserts, *inter alia,* that the evidence adduced at trial was insufficient to support his conviction, that the trial court erred in ruling, following a *Sandoval* hearing, that if the defendant took the stand he could be impeached with prior convictions for environmental crimes committed by both himself and his corporation, and that it further erred in denying his request for a missing witness charge.

The defendant's contentions are without merit.

Viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]).

The People showed that on or about November 15, 1984, the Environmental Protection Agency (hereinafter EPA) notified the defendant that the interim permit to store and dispose of hazardous wastes issued to his corporation, Mattiace Petro-chemical Co. (hereinafter Mattiace) in 1981, was terminated, effective December 15, 1984. Various Mattiace employees testi-fied to considerable accumulations of petrochemical wastes at the terminal site, in both tanks and drums, dating back to the early 1980's.

Richard Fink, an employee of the transporter Industrial Solvent and Chemical Company (hereinafter Industrial), testi-fied that on December 20, 1984, he picked up a full trailerload, or approximately 80 drums, of hazardous wastes for recovery by his company in Pennsylvania. Although it took him only 30 minutes to load his truck, Fink remained at the plant for four hours waiting for the paperwork. The documents he finally received were three hazardous waste manifests, identi-fying three different companies (none of them Mattiace) as the generators of the hazardous wastes to be transported. One of the manifests named Ace Spray Finishing Corp. (hereinafter Ace) as the generator of 30 containers of waste-chlorinated solvent.

The ostensible signers of the three manifests took the stand and denied that the signatures were theirs. Raoul Bocachica, Ace's foreman, not only claimed that he had not signed the Ace manifest, but testified that Ace had not produced *any* waste-chlorinated solvent for approximately 15 years. His account was corroborated by that of coemployee Carlos Mon-talvo, who further testified that all 14 drums of lacquer thinner waste generated by Ace in 1983-1984 had been dis-posed of in January and August of 1984 by S & W Corp. in New Jersey, and that this disposal had been confirmed by S & W Corp. in writing. In late December of 1984 or January of 1985 Montalvo received the faulty manifest from Industrial, and, at about the same time, Ace was visited by New York State Department of Environmental Conservation Investigator Mattera, bearing another copy of the manifest that had been

forwarded to Albany. Thereafter, Ace's president, Sam Fox, telephoned the defendant and arranged a meeting.

The meeting of January 25, 1985, which was attended by Fox, Montalvo, the defendant, and Mattera posing as an Ace employee, was tape recorded. During the meeting, the defendant spoke in an agitated manner of the need to "reclassify" Ace as the generator of paint thinner rather than of chlorinated solvent, but offered no explanation as to why Ace had been charged by Mattiace with disposing of 30 barrels of a kind of hazardous waste that it did not produce or why Ace had received written confirmation that all 14 drums of paint thinner waste generated by Ace in the preceding year had been disposed of by S & W Corp. in New Jersey. In the course of the conversation, the defendant acknowledged that the signature on the Ace manifest was false, that the manifest itself was inaccurate, that the faulty manifest had been issued at the Mattiace terminal, and that Mattiace had picked up no waste from Ace in December of 1984. Finally, a letter drafted by the defendant to be sent to Industrial, also dated January 25, 1985, purportedly to rectify the situation, was presented at the meeting. This document was almost entirely unintelligible, except that it accused Industrial's driver of falsifying the manifest, and it continued to attribute 14 drums of hazardous waste to Ace.

From the foregoing circumstantial evidence, the jury could properly infer the defendant's guilty knowledge and possession of the forged Ace manifest. While evidence of consciousness of guilt "is generally considered weak proof of the commission of a crime" *(People v Marin,* 65 NY2d 741, 746), it has been held that the probative weight of such evidence "depends upon the facts of the particular case" *(People v Benzinger,* 36 NY2d 29, 34). In the instant case, there was evidence that the manifest had been filled out in the defendant's downtown offices where he was physically present. The defendant's corporation had recently lost its interim permit to store hazardous wastes of which it had a substantial accumulation, and the falsified manifest permitted the disposal of considerable quantities of wastes while concealing their provenance from the authorities. Further, the evidence of consciousness of guilt contained in the tape-recorded conversation and in the letter of January 25, 1985, may reasonably be assigned "a moderate degree of probative force" *(People v Benzinger, supra,* at 34). The hypothesis of guilt flows naturally from the facts proved, and is consistent with them all, while being "to a moral certainty"

inconsistent with any reasonable hypothesis of innocence *(People v Gonzalez,* 54 NY2d 729, 731).

We find no error in the Trial Judge's *Sandoval* ruling. "The fact that defendant may specialize in one type of criminal activity should not shield him from impeachment with prior convictions" *(People v Cherry,* 106 AD2d 458; *see also, People v Pavao,* 59 NY2d 282; *People v Brooks,* 139 AD2d 657). The Trial Judge appropriately considered all of the relevant factors in the exercise of his discretion, disallowing some prior convictions, and balancing the defendant's claim that he would be prejudiced by the admission of previous environmental crimes against the evidence of his willingness to place his own self-interest above that of society *(see, People v Sandoval,* 34 NY2d 371). In the circumstances of this case, where the defendant was the owner, chief stockholder and president of a small family business, which had been indicted as his codefendant in the commission of identical crimes, it was not error to admit certain convictions of the corporation to impeach the credibility of the defendant *(cf., People v Torres,* 72 AD2d 754).

The defendant was not entitled to a missing witness charge because of the People's failure to produce Sam Fox, the president of Ace, and Investigator Mattera. The defendant failed to carry his threshold burden of showing that either of these witnesses possessed noncumulative knowledge about a material issue already in the case, since the content of Fox's telephone conversation with the defendant prior to the tape-recorded discussion of January 25, 1988, was irrelevant to the defendant's conduct at that meeting; and the DEC's decision to investigate the defendant requires no explanation *(see, People v Gonzalez,* 68 NY2d 424).

We find that the defendant's custodial sentence is not excessive *(see, People v Farrar,* 52 NY2d 302; *People v Suitte,* 90 AD2d 80). However, the sentence is modified because the maximum fine that may be imposed under Penal Law § 80.00 (1) is $5,000, in the absence of evidence of greater gain *(see,* CPL 470.15 [2] [c]; 470.20 [6]).

We have examined the defendant's remaining contentions and find them to be without merit. Mangano, J. P., Thompson, Spatt and Rosenblatt, JJ., concur.